```
               UNITED STATES DISTRICT COURT
                  DISTRICT OF MINNESOTA
                 Civil No. 12-1915(DSD/LIB)
```

Marc Hall,

        Plaintiff,

v.                                             **ORDER**

Ramsey County; Eric Earl Anderson,
individually and in his official
capacity; Roy Irving, individually
and in his official capacity; Melissa
Jimenez, individually and in her
official capacity and Jodi Leifeld,
individually and in her official capacity,

        Defendants.

    Stephen C. Fiebiger, Esq. and Stephen C. Fiebiger Law Office, 2500 West County Road 42, Suite 190, Burnsville, MN 55337, counsel for plaintiff.

    C. David Dietz, Esq., Kyle M. Thomas, Esq. and Office of the Ramsey County Attorney, 121 Seventh Place East, Suite 4500, St. Paul, MN 55101, counsel for defendants.

    This matter is before the court upon the motion for summary judgment by defendants Ramsey County, Eric Earl Anderson, Roy Irving, Melissa Jimenez and Jodi Leifeld (collectively, defendants). Based on a review of the file, record and proceedings herein, and for the following reasons, the court grants the motion in part.

## BACKGROUND

    This civil-rights dispute arises out of the detention of plaintiff Marc Hall on August 7 and August 8, 2011. On the evening

of August 7, the Eagan Police Department responded to a call after Hall crashed his bicycle into the garage door of a home. Dietz Aff. Ex. 1, at 2. At the scene, Eagan Police Officer Tom Nelson observed that Hall smelled strongly of alcohol. Id. Hall refused a preliminary breath test and Nelson took Hall to the Ramsey County Detox Center (Detox). Id. Nelson turned Hall over to the staff at Detox and declined to pursue any charges. Id. Hall was admitted to Detox at 10:44 p.m, went through the intake process and went to sleep. Id. Ex. 2, at 4-5; Hall Dep. 48:2-4.

At approximately 5:20 a.m. on August 8, Hall complained of knee pain to Leifeld, a nurse at Detox. Leifeld Dep. 22:4-6. Hall was able to walk but was unable to put his full weight on his leg. Hall Dep. 50:14-20. Hall informed Leifeld that he thought his leg was broken and requested medical treatment. Id. at 51:10-12. Leifeld told Hall to wait until Detox processed those patients that were set to be discharged around 5:30 a.m. Leifeld Dep. 22:14-23:22. Leifeld did not examine Hall's leg. Id. at 24:19-21.

Thereafter, at approximately 5:30 a.m., Hall called 911 from the Detox pay phone and requested medical treatment. Moses Dep. 18:16-25. The 911 dispatcher phoned Detox and informed an aide that Hall had called 911. A Detox nurse then informed Hall that his telephone privileges were suspended and that he would be put into seclusion if he called 911 again. Hall Dep. 52:18-53:2. Hall then placed another telephone call. Id. at 53:4-5. Hall alleges

that he was calling an attorney that he had found in the yellow pages and was not dialing 911. Id. at 63:4-64:3. Leifeld called Anderson, Irving and Jimenez (collectively, Aides) to place Hall in a seclusion room. The Aides hung up the phone and led Hall down the hallway towards the seclusion room. Id. at 64:15-19. Anderson and Irving escorted Hall by his wrists and forearms. Id. at 66:25-67:18; Anderson Dep. 65:2-4. Jimenez walked behind Anderson and Irving. Anderson Dep. 65:5-6.

During the escort, Anderson and Irving lost their grip on Hall, and, during the ensuing struggle, pinned Hall against the wall. Hall Dep. 64:20-21; Irving Dep. 30:1-2. Hall alleges that Anderson twisted and yanked his arm behind him and that Hall heard a popping sound. Hall Dep. 85:19-20, 92:19-21. While Anderson was allegedly twisting Hall's arm, Irving pinned him against the wall with his shoulder. Irving Dep. 43:4-9. Irving and Anderson allege that they pinned Hall against the wall to regain control of him. Id. at 45:8-10

After regaining control of Hall, the Aides led Hall to the seclusion room, where Anderson and Irving performed a take-down maneuver and placed Hall face-first onto a mat on the floor. Hall Dep. 100:15-16. In the seclusion room, Hall fell asleep until approximately 7:30 a.m. See Fiebiger Aff. Ex. 18. Detox employees checked on Hall approximately every fifteen minutes. See id. At 7:30 a.m., Hall was let out of the seclusion room. Barrett Dep.

60:3-8.  Hall was then assessed and a Detox nurse noted that Hall complained of right elbow pain, left leg pain and left pectoral pain.  Keeling Dep. 30:10-12.

Hall was taken to Regions Hospital (Regions) around 11:30 a.m., where he was seen by Dr. Cullen Hegarty.  See Hegarty Dep. 16:22-17:3.  Dr. Hegarty ordered x-rays on Hall's elbow and leg. The elbow x-ray displayed a nondisplaced fracture of the elbow. Id. at 30:7-8.  The knee x-ray showed a nondisplaced fracture of the fibula.  Id. at 27:2-10.  Dr. Hegarty placed Hall's arm in a sling and immobilized his left leg.  Id. at 28:19-29:7.  Hall was released from Regions at 3:30 p.m.

On February 27, 2013, Hall filed an amended complaint, alleging claims for excessive force, denial of medical care and denial of due process under 42 U.S.C. § 1983, and state-law claims for assault, battery, false imprisonment and negligence. Defendants move for summary judgment.

**DISCUSSION**

**I.   Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material only when its resolution affects the outcome of

the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, the court views all evidence and inferences in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  A party asserting that a genuine dispute exists — or cannot exist — about a material fact must cite "particular parts of materials in the record."  Fed. R. Civ. P. 56(c)(1)(A).  If a plaintiff cannot support each essential element of a claim, the court must grant summary judgment because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Celotex, 477 U.S. at 322-23.

**II.  Section 1983**

Section 1983 is not an independent source of rights, and a successful claim must demonstrate a deprivation of a specific right, privilege or immunity.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  In this case, Hall alleges that his constitutional rights were violated by defendants (1) using excessive force during the escort to the seclusion room,

(2) denying him due process by placing him in the seclusion room and (3) denying him medical care for his injured leg.

Defendants respond that qualified immunity applies. "Qualified immunity protects government officials performing discretionary functions ... from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Crutcher-Sanchez v. Cnty. of Dakota, 687 F.3d 979, 984 (8th Cir. 2012) (citations and internal quotation marks omitted). Violation of a clearly established right means "that the unlawfulness was apparent in light of preexisting law." Chambers v. Pennycook, 641 F.3d 898, 908 (8th Cir. 2011) (citation omitted). The qualified immunity analysis has two components: whether the government official violated the plaintiff's rights and whether the right was clearly established. Pearson v. Callahan, 555 U.S. 223, 232 (2009). Hall's claims fail because he cannot demonstrate a violation of a constitutional right.

### A. Excessive Force

Hall first alleges that defendants used excessive force while transporting him to the seclusion room. Because defendants were not law enforcement officers and the alleged excessive force occurred in the context of the Detox facility rather than in a criminal setting, the constitutional basis for the claim is the substantive due process clause of the Fourteenth Amendment. See

Lanman v. Hinson, 529 F.3d 673, 680-81 (6th Cir. 2008) ("[W]hen a plaintiff is not in a situation where his rights are governed by the particular provisions of the Fourth or Eighth Amendments, the more generally applicable Due Process Clause of the Fourteenth Amendment provides the individual with protection against physical abuse by officials." (citation omitted)). To establish a violation of his substantive due process rights, Hall "must demonstrate *both* that the official[s'] conduct was conscience-shocking, *and* that the official[s] violated one or more fundamental rights that are deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." Norris v. Engles, 494 F.3d 634, 637-38 (8th Cir. 2007) (emphasis in original) (citations and internal quotation marks omitted).

Defendants argue that summary judgment is warranted because their actions, even taken in the light most favorable to Hall, were not conscience-shocking. The court agrees. "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Cnty. of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998).

> Whether conscience-shocking conduct has occurred is tested by an appraisal of the totality of facts in a given case. That which may, in one setting, constitute a denial of

> fundamental fairness, shocking to the
> universal sense of justice, may, in other
> circumstances, and in the light of other
> considerations, fall short of such denial.

Norris, 494 F.3d at 638 (citations and internal quotation marks omitted).

Here, the court has reviewed the security video of the incident. See Dietz Aff. Ex. 3. The video shows the Aides escorting Hall down the hallway and placing him face-down on the mat in the seclusion room. Hall appears uncooperative as he drags his feet and resists the Aides' escort. Moreover, the amount of force used by the Aides is not obviously excessive or malicious and does not appear to present a reasonably foreseeable risk of bodily injury to Hall. Moreover, the incident arose after Hall disobeyed Leifeld's orders to cease using the telephone while the other patients were being discharged. In other words, the escort and subsequent force was "a good faith effort to maintain or restore discipline." Gottlieb ex rel. Calabria v. Laurel Highlands School Dist., 272 F.3d 168, 173 (3d Cir. 2001) (citation and internal quotation marks omitted); cf. id. at 172-73 ("In determining whether the constitutional line has been crossed, a court must look to such factors as the need for the application of force, the relationship between the need and the amount of force that was used, the extent of injury inflicted, and whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."

(citation and internal quotation marks omitted)). As a result, no reasonable jury could find that the amount of force used on Hall was conscience-shocking, and summary judgment on the excessive force claim is warranted.

### B.  Denial of Medical Care

Hall next argues that defendants demonstrated deliberate indifference to his medical needs by refusing to provide medical care for his leg injury.  As a detainee rather than a prisoner, Hall's "right to medical care arises under the Due Process Clause of the Fourteenth Amendment."  Jackson v. Buckman, No. 13-1165, 2014 WL 2898459, at *3 (8th Cir. June 27, 2014) (citation omitted). Although the claim is rooted in the Fourteenth Amendment, the court applies "the deliberate-indifference standard that governs claims brought by convicted inmates under the Eighth Amendment."  Id. (citations omitted). Under that standard, Hall must show "(1) that [he] suffered [from] objectively serious medical needs and (2) that the ... officials actually knew of but deliberately disregarded those needs."  Fourte v. Faulkner Cnty., Ark., 746 F.3d 384, 387 (8th Cir. 2014) (first and second alterations in original) (citations and internal quotation marks omitted).  "Deliberate indifference is more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation."  Id. (citations and internal quotation marks omitted).  "Deliberate indifference

may be found where medical care [is] so inappropriate as to evidence intentional maltreatment." Id. (alteration in original) (citation and internal quotation marks omitted).

Defendants argue that Hall did not have an objectively serious medical need for treatment. The court agrees. "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." Coleman v. Rahija, 114 F.3d 778, 784 (8th Cir. 1997) (citation and internal quotation marks omitted). Here, despite Hall's reports of leg pain, he was able to walk and move with little difficulty, and Hall did not appear to Leifeld to require immediate medical attention. See Hall Dep. 50:14-27; Leifeld Dep. 25:4-5.

Moreover, Hall alleges only a six-hour delay in - and not a complete denial of - treatment of his leg injury. "When [a detainee] alleges that a delay in medical treatment constituted a constitutional deprivation, the objective seriousness of the deprivation should also be measured by reference to the effect of delay in treatment." Coleman, 114 F.3d at 784 (citation and internal quotation marks omitted). Thus, Hall "must present medical evidence to show that any treatment delay had a detrimental effect" on the injury. Thomsen v. Ross, 368 F. Supp. 2d 961, 973 (D. Minn. 2005) (citation omitted). Here, Hall has presented no such evidence of a detrimental effect caused by the delay, arguing

10

only that the delay caused "unnecessary pain and suffering." Mem. Opp'n 35. Such generalized arguments are insufficient to show a detrimental effect from the delay. See Coleman, 114 F.3d at 784 (noting that a detainee's "failure to place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment precludes a claim of deliberate indifference to medical needs." (citation omitted)). As a result, summary judgment on the deliberate indifference claim is warranted.

### C. Denial of Due Process

Hall next argues that he was denied due process when defendants placed him in the seclusion unit. "To set forth a procedural due process violation, a plaintiff, first, must establish that his protected liberty or property interest is at stake .... Second, the plaintiff must prove that the defendant deprived him of such an interest without due process of law." Gordon v. Hansen, 168 F.3d 1109, 1114 (8th Cir. 1999) (per curiam) (citations omitted). Here, Hall argues that he was placed in seclusion as a form of punishment, in contravention of his constitutionally-protected liberty interest. Cf. Martinez v. Turner, 977 F.2d 421, 423 (8th Cir. 1992) ("Pretrial detainees are presumed innocent and may not be punished." (citation omitted)).

As a threshold matter, it is unclear whether the standards governing pretrial detainees apply to Hall, as he was never arrested and was not facing criminal charges. Even if such

11

standards apply, however, Hall has not created a genuine issue of material fact as to whether his placement in the seclusion unit was punitive. Indeed, whether a "particular restriction or condition accompanying pretrial detention is punishment turns on whether [the] restriction or condition is reasonably related to [a] legitimate governmental objective." <u>Whitfield v. Dicker</u>, 41 F. App'x 6, 7 (8th Cir. 2002) (unpublished per curiam) (citation omitted). Here, Hall requested medical treatment from Leifeld and called 911 during the time other patients were being discharged. <u>See</u> Leifeld Dep. 22:14-23:22. Moreover, after Hall was told that his telephone privileges were suspended, he again attempted to place a telephone call. <u>See</u> Hall Dep. 63:4-64:18. Such actions were disruptive to Detox's discharge process, and maintaining "order within [an] institution [is a] permissible nonpunitive objective[]." <u>Whitfield</u>, 41 F. App'x at 7 (citation omitted). Moreover, only if "the restriction or condition is arbitrary or purposeless ... [does] the action [become] a punishment that violates Due Process if inflicted upon detainees." <u>Smith v. Copeland</u>, 892 F. Supp. 1218, 1227 (E.D. Mo. 1995) (citation and internal quotation marks omitted). Here, Hall's temporary seclusion was not arbitrary or purposeless, as it served the purpose of maintaining order within Detox during patient discharge. As a result, no reasonable jury could find that such an action was

punitive, and summary judgment on the due process claim is warranted.[1]

## III.  Remaining State Law Claims

As already explained, summary judgment on the § 1983 claims — the only claims for which this court's original jurisdiction existed — is warranted.  Thus, the court must now consider whether to exercise supplemental jurisdiction over the remaining state-law claims.  See 28 U.S.C. § 1367(c)(3); Johnson v. City of Shorewood, Minn., 360 F.3d 810, 819 (8th Cir. 2004).  "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims."  Dodson v. Univ. of Ark. for Med. Scis., 601 F.3d 750, 756 (8th Cir. 2010) (per curiam) (citations and internal quotation marks omitted).  Based on consideration of the pendent jurisdiction factors, the court does not exercise its

---

[1] Hall also alleges a due process claim against Ramsey County for maintaining an "official policy and practice that authorized individual defendants and staff to use physical holds, restraint and the seclusion room on [Hall] at the Detox Center." Am. Compl. ¶ 44.  As already explained, summary judgment is warranted on the constitutional claims against the individual defendants.  For these same reasons, summary judgment is warranted on the derivative claim against Ramsey County.

discretion to take supplemental jurisdiction over the state-law claims. Therefore, the court dismisses Hall's remaining state law claims without prejudice.

## CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

    1.   The motion for summary judgment [ECF No. 42] is granted in part, consistent with this order;

    2.   Hall's federal constitutional claims are dismissed with prejudice;

    3.   Hall's state law claims are dismissed without prejudice.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  August 14, 2014

                                            s/David S. Doty
                                            David S. Doty, Judge
                                            United States District Court